May it please the Court, my name is Elizabeth Letcher, I represent the Petitioner Raymond Bradford, and I'd like to reserve three minutes if possible for rebuttal. Having jurors see a defendant shackled during trial causes unfair prejudice because it creates an inherent danger that the jury may form the impression that the defendant is dangerous and essentially brands the defendant as having a violent nature. That is precisely the kind of prejudice that Petitioner Raymond Bradford suffered in this case during his criminal trial, the danger of being branded in the jury's mind as a perpetually violent and out-of-control person. Bradford was tried for battery of prison guards during two cell extractions at Pelican Bay, specifically for throwing feces, for spitting, and for headbutting one officer. The jury saw videotaped footage, not only of the charged incidents, which spanned only a few minutes, but of over an hour of utterly irrelevant and unfairly prejudicial videotape of events before, after, and even hours after the cell extractions took place. They saw him shackled to a gurney. They saw him shackled to a wheelchair with a hood covering his entire head. They saw him held down by multiple guards. Those images and others created the same branding-as-violent kind of prejudice as having a defendant visibly shackled in the courtroom. The inherently prejudicial effect of those images was compounded by videotaped footage of other inflammatory things such as Bradford's sexual outbursts, his constant profanity, his singing, his muttering, and his racial epithets. The videotapes all taken together were so inflammatory and so hopelessly biased the jury against him, particularly on those charges where Bradford's intent was hotly contested, that they fundamentally infected the entire trial and rendered it unfair, thereby violating his due process rights. The State courts never said anything about this, right? I mean, it was exhausted, but they never said anything about it. It was a summary denial. And the district court seemed to say that it wasn't prejudicial. Is that what it said? The district court claimed that he hadn't properly raised the objection as to the 1996 tape of the feces-throwing incident and that the 1997 tape was not prejudicial. Bradford did properly. Bradford's objection to both tapes was timely under the circumstances. He got notice of the tapes only on the first day of trial, even though he had requested them a month beforehand and they had been mentioned in a pretrial conference that covered discovery. He was faced with the tapes during lunch of the first day of his trial. He watched them. They argued the 1997 tape at that time. And it was on the next morning that the judge saw the 1996 tape, and he raised his objection. Has that issue been certified for appeal? We filed a motion to broaden the certificate of appeal. But it has not been certified. It has not yet been certified. Because it's so inextricably interlinked with the prejudice caused by the videotapes in general, we chose to brief it with this. And we request that you certify it at this time. We have not yet done that. No, you have not. All right. And if we do, the normal procedure would be we'll ask for further briefing on the point. So you're not going to get cut off without having a chance to be heard, not just orally, but in writing. But do I hear you saying that quite aside from whether it's a separate issue? Exactly. It has something to do with the nature of the objection. In other words, he was doing this on the fly, essentially, because he only got it moments before or not at moments, but a couple hours, I guess, before he had to object to it. He was a nonlawyer, and he didn't have time to consult with anybody about what kind of objections he could raise and so on. Exactly. He did make an objection. He did object to the introduction. He objected as best he could. Even if the timeliness objection is not a separate constitutional violation, it goes both to the adequacy of his objection to the 1996 tape, because he simply didn't have time to prepare or to research the nature of objections, to research how he could have suggested redactions to the judge that might have minimized the prejudice, and also because it compounds the prejudice inherent in the tape, because he wasn't able to say, let's have it restricted to the moments showing the charges that are before the jury, or let's have it without audio, let's have it with the audio, and then we can have the evidence that's necessary to provide context if that's required, apart from the very specific testimony of each of these events that was presented to the trial. Now, this I'm not sure how relevant it is. Videotape deteriorates over time, and old videotapes sometimes it gets quite blurry. I've watched these videotapes, and some of the things are blurry, some of the sound is bad. How long have these videotapes been in existence? Let's just say, what's the time lag then between the time the jury saw them and between the time we saw them in preparing for this argument? Presumably, the original videotapes were made at the time of the event, 1996-97. I don't know what generation copy these are. And the trial was shortly thereafter. So these tapes are 7 years old and maybe haven't gone through a couple of iterations. Okay. So to some degree, the fuzziness on the tape may be a product of age or duplication. I can't tell. Okay. Did I have trouble hearing some of the words? I mean, is this? Yeah. Okay. What's going on in the videotape is unclear. But what's more important is that the vast majority of the videotapes are completely irrelevant to the charges that were before the jury. I think that the Court should apply the standard in the LeMay case and find that they can be unconstitutionally prejudicial. Well, let's assume that we thought that. That certainly much of it is irrelevant. The question is whether it's due process level irrelevant. But let's assume we thought that, that admitting this evidence precluded a fair trial. Do we still get to a direct kind of harmicera analysis? There is a prejudice analysis. I submit that the Court should use the same kind of prejudice analysis that you see in the Shackling cases, that once you decide that the jury has been unfairly affected by this kind of vision of the defendant branded as inherently violent, then it cannot be considered harmless. Well, but the Shackling cases are automatic. Essentially, if the jury sees the defendant in shackles, with a couple of exceptions, that's the end of the inquiry. And I think that's what the Court should do here. Because if the jury cannot objectively evaluate what is going on, especially in the... Isn't there a difference between shackling a defendant in a courtroom, which leads the jury to believe this defendant is so dangerous that he can't even be allowed out in public in a courtroom, versus what was going on here, which was obviously in a confinement setting, and they're moving him from one cell to another. Isn't the analytical basis quite a bit different? I'm using the analogy that it's the same kind of effect on the jury. The difference is that in the Shackling cases, the defendant is actually posing some kind of danger due to either a danger of disruption or violence. The images that had the same effect on the jury here, those images of him as violent on the videotape, posed no threat to the jury or to the trial process. They were shown, even despite the fact that he was not – that there was no possibility of violence coming from those videotapes. Even if... I suspect that you're going to have quite a bit to say in response to what the State says, so why don't we save quite a bit of time for you on rebuttal. Okay. Thank you. I may be wrong, but I think you might. But, you know, you've got two minutes. May it please the Court. The introduction of the videotapes in their entirety, which portray the charged offenses, do not violate due process or rise to the level of a denying Mr. Bradford a fair trial. Is there any chance that if Mr. Bradford were counseled that these tapes would have come in the way they came in? In a perfect world, he would not have read it out and he would have had counsel and possibly counsel would have asked for some redaction. I don't know. And it is – he did not have... I'm really relying on a – and the reason why he would have gotten the redactions is precisely because 90 percent of what's in those tapes, which I've also watched, is irrelevant. And whether prejudicial or not prejudicial, and I would say it probably was prejudicial, it was irrelevant. Right? I would not concede that at all, actually. I think that... Not concede prejudice or not concede irrelevancy? I would not concede that the – showing the entire tape – that the part of the tape other than just the actual incident itself was irrelevant. I think it was relevant in the – as the district court noted. You're saying there are these people getting up talking about things that had happened previously? I think the – certainly the portions of the tape where it showed the guards talking to him ahead of time, letting him know what was going to happen, asking for his cooperation. But there was talking to the camera saying that this happened before the tape even started running. That wasn't a tape, too. Right. And I don't think that's irrelevant to the incident itself. I don't think it's irrelevant to the incident itself, to giving context to what Mr. Bradford did, to his actions in the head-butting and spitting and throwing feces in urine. I think the rest of the tape gave context to that and showed – What's the point of having him – showing him being shackled and taken down the hall for a long period of time and all that? How is that relevant to anything? I think it's relevant to show a number of issues that he disputed. Did he actually throw? Were the officers struck by anything? After we saw the throwing incident and the spitting incident, and then we go on for another 15, 20 minutes of this guy in shackles on a gurney being undressed and so on. I think there are inferences the jury could draw from that that have relevance. For example? For example, was he cooperative or not?  Well, after the incident. Why does it matter? I think it's relevant to show whether he was cooperative during the incident. Well, first of all, we know he wasn't cooperative by watching the tape. Why does that matter? Okay, he wasn't cooperative, but that's not the – he wasn't charged with being uncooperative. He was charged with doing certain things. I think there's permissible inferences the jury could draw. And I don't think it was so prejudicial that it rose to a level – to a due process violation. Well, that's a different question because the officers didn't need to justify, for purposes of this case, moving him from one cell to another. They're perfectly capable of doing that under the prison rules, I assume. Right. And so whether or not he was cooperative had nothing to do with the question, did he throw urine and feces on the officer. Right, which he denied. But you've got the videotape which shows it. Right. You come into this case later, which is appellate attorney disadvantaged, but is there anything in the record that indicates why everybody sat there through all these interminable minutes of irrelevant videotape without redacting it? No. It was never requested. I mean, he represented himself. He didn't request. And the trial just didn't do it sous-spende. But he did complain. I mean, he did. And he was in the right ballpark. I mean, his complaints were in the right ballpark in the sense that he said. Right. I mean, he complained about the one as not being probative, the 96 tape. He did not make a prejudicial, a formal prejudicial. It's relevant to what his complaint is, which is it's because ultimately it's a balance under the proper standard anyway, and he's saying this stuff's not worth anything and it's bad for me. And then he got more articulate about what was bad about it when he talked about the other tape. When they talked about the 97 tape. It was in the right general ballpark in terms of what the problem was. Right. And why you're asking me, why didn't the judge why didn't the judge redacted on his own? I don't know. I kind of wonder if there's anything in the record why the prosecutor did. In other words, most trial lawyers try not to bore the socks off the jury during the course of the trial. And that would have been. And you would hope they wouldn't want to make mistakes so that their their record is clean on appeal. Right. I mean, they're setting up this appeal. Right. No, I understand. Yeah, sure. I understand. They're rolling their eyes looking at this thing thinking, why are we here? That's simply not a good place for the trial lawyer to be. Correct. I agree with you. Had I done it, it would have been different. Yeah, sure. But you're stuck with what I'm stuck with, what is. And I also he didn't. There may have been the fact that he wasn't represented, of course, his own choice. It wasn't perfect. Now, this is outside the record, and you probably don't know, but I'm kind of trying to figure out what's happening here. I assume he shackled during trial. No. He's not shackled. I don't. Yes, he was. He definitely was. I think I read that. Okay. There were some restraints. There were some restraints. And I think there was some restraining. And I think there was shackling of his legs. I'm trying to figure out just how is this working. The state shows up with his tape in the morning. And this may be sliding over into what's at least not at this moment part of the COA. But the state's showing up in the morning with the tape. He's saying, wait a minute. I want to see it. He's given over the lunch hour, maybe still in shackles, he's allowed to see it. And then he makes some objections that aren't maybe as lawyerly as a good lawyer would make them. But this is a pretty tough business for somebody in that situation to be asked on the fly, in shackles, uneducated in the law, to figure out I have to say the magic word redacted. True. No, I agree. I agree. No, it's fairly sophisticated. But that's the risk he took when he represented himself. But somebody there, including the judge, could figure out, oh, he means redacted. Now, go ahead. Did you have another question? No, I didn't. Go ahead. Okay. Well, suppose we did think that this were, and this is the same question I asked the other side, if we thought that there was, in fact, a problem with the admission of the whole of these tapes, what do we do then? What standard do we apply with regard to prejudice? Any? Brecht. I believe it's Brecht. All right. And how do you apply that here? On all the cases. In my brief, I applied it by arguing that there was overwhelming evidence of his, of the incidents of all the charged offenses. Without regard to the tape at all. Without regard to the tape at all. There was testimony by the guards. There was also expert testimony on what actually was thrown because it was, you know, samples were taken off of the uniforms or whatever. And that that alone was enough to convict on all the charged offenses. Enough with regard to one of the spitting incidents. On the tape, I couldn't see it. Right. No, and I think that was one of the, excuse me, but I think that was one of his arguments, and I think that was another reason why they were so relevant as to the incidents. And Bradford argued, you, it shows that I didn't do it. It shows that I didn't spit or that it was accidental. And I think the trial judge. Don't worry about the overwhelming evidence. Made a comment. You mean. Yes. I mean. So could have cut the other way. That he did it and you could look at the tape and. And argued that he didn't. Not only argue that you didn't. He did. You saw him spitting out into the. But he wasn't hitting anybody. And there just didn't seem to be any other. In some way, in some ways, just having the testimony might have been. I mean, you know, I agree. I think the tapes are. It isn't exactly clear in the tapes of the actual incidents what happened. I don't think it shows exactly. But on the other hand, you had officers coming in, I believe nine at least, testifying about each of the charged incidents. I think that testimony alone was going to be enough to convict him. You had the tape, which I don't think anyone is suggesting that that part of the tape couldn't have come in. Right. And you had testimony. And they were inconsistent, at least arguably inconsistent. So how can we say that if he hadn't had all the other stuff in the tape, all the stuff that was both irrelevant and prejudicial, that the same result would have come out, at least on that count? I think you can say that if, let's say you just had those portions of the tape that showed the incident and you excised everything else. Right. And then you had the testimony of the officers and you had Bradford's testimony in his own defense, which he testified. How can you say on a correct standard that the jury would have believed the officers in the face of the tape, but for everything else that went on? I think you can easily say that they would have. There was – if you have these officers, especially when you have more than one officer testifying about what happened in one single incident. Did they ever explain why you couldn't see it on the tape? I mean, frankly, I wouldn't have believed it. I couldn't see it unless somebody explained to me why I couldn't see it and why would I believe that? Did the officers explain afterwards? Not as far as I know, no. I don't remember that. I mean, they all explained what happened and, you know, this is what we did, step A, step B, step C. I don't recall that they testified that, well, the tape looks like X, but this is what really happened. So I think that, you know, maybe in some ways the testimony of the officers was more clear than what actually occurred on the tape, than the actual. And therefore, a jury, which wasn't otherwise prejudiced, could have believed the tape and not the – would have more likely believed the tape and not the officers if everything else hadn't gone on. Would have believed the tape that it didn't happen, you mean, if it had been redacted? Just to follow on, I don't want to detain you too long. It was quite interesting, the spitting. I had trouble seeing the spitting that was the bad spitting. But it was easily visible on the tape, as it were, the innocent spitting. And his argument was, listen, I was spitting because I had been subjected to this pepper spray stuff. And he then has a plausible, look, I'm spitting, I'm just trying to save myself. And the fact that somebody might, you know, I've got all these problems because of it, and I'm spitting just to get the stuff out of my system. And the fact that somebody might have been in the way at an earlier time, well, look, I'm not. Isn't that for the jury to decide? But what I'm saying is if we'd had the tape confined the way lawyers on both sides would have confined it, here's what's relevant to my case, here's what's relevant to my case, and all the rest of the stuff isn't there, he might have had a pretty good case, at least on the spitting. He might have had a pretty good case on the head butt, because that wasn't much of a motion either. I'm not sure he would have had much of a case on the feces and the urine stuff. Yeah. Yeah. Okay. I would submit it. Okay. Thanks very much. Two minutes. I think you have already made my rebuttal for me, that even under the Brecht standard, had the tapes been redacted to show only the disputed events, we don't know what the jury would have done on the two spitting incidents, each of which you got two years for, and on the head butting incident, for which you got two years, because we don't know what the jury would have done had they not been prejudiced by all those incredibly inflammatory and irrelevant issues. Are there any other questions that you'd like me to address specifically? I think at this time, no. If we do decide to expand the COA, we will ask for briefing on that question. Okay. I just want to point out that while Mr. Bradford's being unrepresented does not excuse anything specifically, that does not make an opportunity for the prosecution to take advantage of that fact by admitting this important evidence, exposing him to this important evidence late so that he couldn't formulate the proper objections, so that he couldn't ask for redaction. And the prejudice, even if it's not a separate constitutional violation, it feeds into the prejudice that he suffered. Okay. Thank you. Thank you very much. Both sides for a very helpful argument. The case of Bradford v. Ayers is now submitted for decision. We'll take a five-minute break before we recommence with Green v. Housing Authority. Thank you. Thank you.
judges: T.G. Nelson, W. Fletcher, Berzon